HOWARD PHIPPS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104950.    Promulgated July 17, 1942.

*B. H. Bartholow, Esq.*, for the petitioner.
*Z. N. Diamond, Esq.*, for the respondent.

364

OPPER: We can not distinguish this case in principle from *Commissioner* v. *Buck* (C. C. A., 2d Cir.), 120 Fed. (2d) 775, which applies to its own facts the theory of *Helvering* v. *Clifford*, 309 U. S. 331, and concludes that the taxpayer there was subject to tax on the income of a trust he had created. We think the same result must follow here.

It has been said that the *Clifford* principle rests upon a triangular base: Control over the corpus by the grantor, intimate family relationship with the beneficiaries, and the short term of the trust. But the clarification contributed in a number of subsequent decisions makes it evident that the last of the three considerations is in fact nothing but a factor supplemental to the other two. The doctrine may be narrowed to this: That if the grantor has retained the substance of control over the custody and management of the principal of the trust by his own position as trustee or by his control of the fiduciary, cf. *Frank G. Hoover*, 42 B. T. A. 786, and if at the same time he enjoys a sufficient measure of the financial or even of the noneconomic benefits of the income through its distribution within the intimate family group, *Whitely* v. *Commissioner* (C. C. A., 3d Cir.), 120 Fed. (2d) 782, or alternatively through his control of that distribution, direct or indirect, *Commissioner* v. *Buck*, *supra*, then the transfer to the trust is at best illusory and the grantor has unsuccessfully attempted "to have his cake and eat it."

The function of the length of the term of the trust is thus no more than to act as an indicator or contributing factor in the determination of the other two criteria. *Morton Stein*, 41 B. T. A. 994. If the term is short, evidence of control is furnished almost automatically. If the term is long or indeterminable, it may be that other elements of control must be found. *Helvering* v. *Elias* (C. C. A., 2d Cir.), 122 Fed. (2d) 171; *Ellis H. Warren*, 45 B. T. A. 379. And the same may be said of the grantor's position as sole or joint trustee. He may, through a power to influence the trustee's action, be in a position as dominant as though he were technically the trustee himself. *Frank G. Hoover, supra; Commissioner* v. *Barbour* (C. C. A., 2d Cir.), 122 Fed. (2d) 165. The important process is to decipher if we can in an all-inclusive survey of the terms of the arrangement, the relationship of the parties, and the potential as well as actual developments, whether there has in fact resulted an open-handed freeing by the grantor of substantially all of his connection with the trust property on the one hand or a purely perfunctory and superficial release while at the same time the basic elements of control and enjoyment remain. Cf. *Harrison* v. *Schaffner*, 312 U. S. 579; *Helvering* v. *Horst*, 311 U. S. 112.

The present circumstances may indeed differ considerably from those in the *Clifford* case. But the principle does not rest within

the frame of an instantly recognizable and always identical arrangement of provisions and circumstances. The grantor may ostensibly have surrendered what lawyers are accustomed to consider the legal tools for controlling property. The income may be irrevocably guided to destinations excluding his own pocket. Yet the doctrine of the *Clifford* case requires the triers of the facts to consider whether, in the light of all the circumstances and with an eye to all the significant relationships, the grantor has so fundamentally separated himself from the control of corpus, the enjoyment of income, and the realization of economic benefits and personal satisfactions connected with the property, that as practical people we can assure ourselves of the reality of any conclusion that the beneficiary enjoys substantially all, and the grantor substantially none, of those advantages of civilized government inhering in the possession of property for which income taxes in the last analysis are exacted. See *Corliss* v. *Bowers*, 281 U. S. 376.

In many situations, to which the present is no exception, this is a difficult and subtle exercise. It may be necessary to arrive at an appropriate solution by resort to analogy and hypothesis. And yet if we fail to do so a result which is evident to the lay mind may fail of recognition by the very bodies which are entrusted with applying in the field of taxation what must be essentially practical and common experience.

Here we have the story of an individual whose asserted motive is the making of periodic gifts to a member of his intimate family. If, while retaining the property producing them, these presents were handed out from time to time by the petitioner, it is clear his income would remain undiminished for tax purposes. *Helvering* v. *Horst, supra.* But for reasons of which we are not apprised, except that they seem to have stemmed from the legal and technical advice which petitioner obtained, these gifts were made, not by an outright transfer, but by the indirect process of a discretionary trust, with at least the exercise of a joint control lodged in a corporate trustee operated by petitioner's family.

Clearly this family fiduciary was dominated by petitioner, his brothers and sisters. Just as positively, though this is partly inference, the wishes of each as to the fiduciary's transactions respecting a trust established by him would be respected by the others. To every practical degree, therefore, we must consider that petitioner could control the fiduciary's activities to accord with his wishes, even though he may as yet have made no effort to do so, and we have so found as an ultimate fact. "The possession of the power is determinative, not the fortuitous manner of its use." *David M. Heyman,* 44 B. T. A. 1009.

Income was payable for the wife's use or for the support of the child, or was to be accumulated, depending exclusively on the discretion of the trustees. In New York, decisions of that nature must

be unanimous in the case of multiple trustees, and that, of course, is even more true where there are but two. "It seems to be well established that where the acts of trustees call for exercise of discretion and judgment, the concurrence of all is necessary." *In re Johnson's Will*, 123 Misc. 834; 207 N. Y. S. 66; *In re Campbell's Estate*, 13 N. Y. S. (2d) 773; affd., 26 N. Y. S. (2d) 491.

The wife, therefore, could lay no positive claim to a single penny of the trust income. See *Fulham* v. *Commissioner* (C. C. A., 1st Cir.), 110 Fed. (2d) 916. If the corporate trustee of which petitioner had practical control refused to sanction the enjoyment of these benefits by the wife, her capacity to share in the prospective gifts could be limited, reduced, or destroyed. The money could then be spent for the support of petitioner's child, or it could be withheld from both wife and child. "Though lacking legal power to control [the trustee's] discretion, there is little doubt that [the grantor] could have her way in directing the disposition of income between the possible beneficiaries." *Commissioner* v. *Lamont* (C. C. A., 2d Cir.), 127 Fed. (2d) 875.

True, so long as the affectionate solidarity of the family was preserved, such a development was unlikely, and in fact we know from the evidence that it has not occurred. But if these contributions flowing indirectly from the petitioner were those which he would in any event have contrived for his own personal satisfaction, there is here no detriment to his position, attributable to the trust arrangements, such as would satisfy the *Clifford* test. A similar situation applies to the management of the corpus and to the reinvestment of accumulated income. Petitioner's subservient corporation could stalemate, and in fact did arrange and govern these matters.

Thus, so long as the anticipated relationship between petitioner and his wife might prevail we have the very essence of the family's solidarity upon which the principle of the *Clifford* case fundamentally rests. And if the time arrives when this no longer obtains, the structure and arrangement of the trust is such that petitioner's intervention can be made effective. See *David M. Heyman, supra*. He can then control, by indirection, the distribution of the trust income. *Commissioner* v. *Buck, supra*.

It can not be said that petitioner has relinquished this control merely because, in addition to the discretionary possibility of the current receipt of income by the wife, she has a substantial right by virtue of her interest in income and principal upon the death of the daughter. That condition did not exist during the year we are considering. Cf. *Frank G. Hoover, supra*. And while such a potential adversity of interest may be significant in applying sections 166 and 167, it is inconsequential in construing section 22 (a). But cf. *Everett D. Graff*, 40 B. T. A. 920; affd. (C. C. A., 7th Cir.), 117 Fed. (2d) 247. And see

*Altmaier* v. *Commissioner* (C. C. A., 6th Cir.), 116 Fed. (2d) 162. And finally the power of appointment over the principal which was given to the wife was, like all the other trust arrangements when adequately scrutinized, carefully limited and safeguarded so that the grantor failed to relinquish his fundamental interest. For the appointment is confined to claimants who would be the natural objects of the grantor's bounty in any event, his own descendants. We can scarcely conclude that a power so circumscribed, particularly with respect to any desire which the wife might have to benefit her own family and personal concerns where they differed from those of the grantor, can be said to effect a substantial relinquishment of property interests by the husband.

A perhaps not inadmissible test of the extent to which this trust was a mere rearrangement of the family finances on the one hand or an outright disposition in favor of the wife on the other is to consider the probable attitude of the parties, were they in a position of dealing at arm's length or in a situation where their interests were actually adverse. Suppose, for example, that this trust had been occasioned by the imminence of a proceeding for separation or divorce. Can it be imagined for an instant that a wife would be willing to accept, in lieu of alimony or a property settlement, provision whereby all of the income could be withheld from her throughout her daughter's life; where payment of income and control of the investment and maintenance of principal were in the hands of a cotrustee dominated by the husband and his family; and where the sole right with respect to disposition of the principal upon her death would rest in the wife, subject to the frustrating limitation that the appointment could be made only in favor of her husband's descendants? We think it clear that judged by such a test the result must be that this was the kind of trust that would only be established by the husband and would only be acceptable to the wife as an indirect means for the one to make periodical gifts to the other as long as the family relationship existed undisturbed. This seems to us the very crux and core of the *Clifford* principle and of other cases recently dealing with similar problems.

We do not pass upon the separate applicability of sections 166 and 167, nor upon whether that issue is neatly severable in such cases as this. It might be argued that what we have said adds up to an absence of that adverse interest of the wife which sections 166 and 167 require, see *Rollins* v. *Helvering* (C. C. A., 8th Cir.), 92 Fed. (2d) 390; *Fulham* v. *Commissioner*, *supra;* that as long as the wife's conduct satisfies petitioner, she may have an interest but clearly one which is not adverse; and that if the reverse occurs, she may be an adverse party, but the situation can be so controlled that she has no effective interest. But the doctrine of the *Clifford* case and the rule of sections 166 and 167 are designed for the same purpose and applicable at times to the same

situations. See *Whitely* v. *Commissioner, supra; Helvering* v. *Elias, supra; Commissioner* v. *Barbour, supra.* They are certainly not inconsistent. Suffice it to say here, therefore, merely that all the present circumstances go to show how little this petitioner, like *Clifford,* can justifiably feel that he was any worse off financially or from the viewpoint of family control after he had placed property of which he was the outright owner in a trust fashioned to carry out his purposes and subject in the last analysis to his ultimate direction; and that as the grantor of property of which control and benefit is in fact retained, we think petitioner has failed to divest himself to a sufficient degree of the advantages and satisfactions of ownership to be freed from the tax on this income.

Reviewed by the Board.

*Decision will be entered for respondent.*

BLACK, dissenting: The majority opinion begins by stating:

We can not distinguish this case in principle from *Commissioner* v. *Buck* (C. C. A., 2d Cir.), 120 Fed (2d) 775, which applies to its own facts the theory of *Helvering* v. *Clifford,* 309 U. S. 331, and concludes that the taxpayer there was subject to tax on the income of a trust he had created. We think the same result must follow here.

If I could agree that the facts in the instant case are not distinguishable in principle from those present in the *Buck* case, I would concur in the majority opinion, but it seems to me that the facts in the instant case are clearly distinguishable from those present in the *Buck* case. In the *Buck* case the grantor of the trust reserved to himself very large powers of control over the trust income and corpus. Those powers were enumerated by the court as follows:

In 1932 Ellsworth B. Buck, respondent here, conveyed 10,000 shares of William Wrigley, Jr. Company stock to a bank, as trustee, to pay the income to his wife for life and, on her death, to pay the income and ultimately the principal to his children or their descendants. He retained a power "to alter or amend in any respect whatsoever" the provisions relating to the distribution of the income or principal, except that this power could not be exercised so as to revoke the trust, revest title to the principal in him, or direct that the income be paid to him, accumulated for him, or applied to the payment of insurance premiums on his life. In the event that a beneficiary predeceased him, the share held for that beneficiary was to return to Buck. He also retained the powers to remove the trustees, and to direct the trustee how to exercise its powers to retain or dispose of the corpus and to invest or reinvest the proceeds of a sale, and reserved the right to vote any stock or to direct the trustee how to vote it.

In the instant case Howard Phipps, the grantor of the trust, reserved no such powers of control over the income or the corpus of the trust as are enumerated in the above paragraph as being reserved by grantor Buck. In fact, he reserved no powers of control over the trust income or corpus to himself. He was not even a trustee in the taxable year. In 1934, upon advice of his counsel, he resigned as one of the trustees.

The majority opinion recognizes that Howard Phipps, as grantor of the trust, reserved no power of control to himself over the trust income or corpus, but the opinion says in effect that broad powers of management and control were conferred upon the trustees which made them comparable to the powers retained by the grantor in the *Buck* case; that one of the trustees was the Bessemer Trust Co.; that it was the *alter ego* of petitioner; hence, the instant case is brought within the ambit of the *Buck* case. This is a line of reasoning in which I am unable to concur.

The Bessemer Trust Co. was no makeshift corporation created merely to serve the wishes and purposes of petitioner. It was, and is, evidently a very substantial business corporation. It was incorporated under the laws of the State of New Jersey in 1907. According to the findings of fact which are made the basis of the majority opinion, it handles the financial matters of the Phipps family and acts as trustee for trusts created by them. It maintains an investment department which employs the services of various investment counsel firms to recommend changes in investments. It subscribes to other investment services and makes investigations to determine the desirability of securities. Under such circumstances it seems to me that it was the perfectly natural and normal thing for petitioner to make it the corporate trustee for the irrevocable trust which he created in 1932 for the benefit of his wife and daughter. It had ample facilities for experienced management. I see no warrant for our assuming that the Bessemer Trust Co. will act in the administration of its trust in any other manner than a normal and correct trustee would act in discharging fiduciary duties. Assuming that it will so act, and certainly the facts do not show that it has done otherwise down to the present time, then I do not see how it can be said that the instant case is controlled by *Commissioner* v. *Buck*, 120 Fed. (2d) 775, and *Helvering* v. *Clifford*, 309 U. S. 331. The cases, in my judgment, are altogether different. It seems to me that the powers granted to the trustees (Bessemer Trust Co. and Harriet Phipps) in the taxable year before us were normal to a discretionary trust—such a trust as is taxable under section 161 (a) (4) of the Revenue Act of 1934. The discretionary powers granted to the trustees are enumerated in the findings of fact and need not be repeated here. It seems to me that by no stretch of logic can these discretionary powers to be exercised by the trustees in their fiduciary capacities be compared to the powers which the grantor of the trusts reserved in the *Buck* and *Clifford* cases.

I think the facts of the instant case bring it within the ambit of *Commissioner* v. *Branch*, 114 Fed. (2d) 985, in which the court, among other things, said:

\* \* \* Where the grantor has stripped himself of all command over the income for an indefinite period, and in all probability, under the terms of the

trust instrument, will never regain beneficial ownership of the corpus, there seems to be no statutory basis for treating the income as that of the grantor under Section 22 (a) merely because he has made himself trustee with broad power in that capacity to manage the trust estate.   *   *   *

In the instant case the trust is to last until the death of the last survivor of petitioner's wife, Harriet Phipps, and petitioner's daughter, Anne Phipps. Thus to use the language of the court in the *Branch* case, petitioner "has stripped himself of all command over the income for an indefinite period, and in all probability, under the terms of the trust instrument, will never regain beneficial ownership of the corpus." This being the case, there seems to be no reason to tax petitioner with the income under section 22 (a). There are appropriate provisions of the statute which tax the undistributed income to the trust as a separate taxable entity, see section 161 (a) (4), Revenue Act of 1934, and tax the distributed income to the wife, the beneficiary who received it, see section 162 (c) of the same act. These statutes seem to have been complied with in the taxable year which we have before us. In my judgment, the law requires no more.

The Board followed *Commissioner* v. *Branch, supra,* in *Frederick Ayer,* 45 B. T. A. 146, in which, among other things, we said:

*   *   * It should be remembered that the trusts involved in the instant case were not short term trusts, as in the *Clifford* case, but were for the life of the beneficiary named in the respective trusts. The corpus and accumulated income were not to revert to the grantor except upon a remote contingency. Under these circumstances, we do not think *Helvering* v. *Clifford, supra,* is controlling.

Cf. *Jones, Collector* v. *Norris,* 122 Fed. (2d) 6.

For reasons I have stated above I do not believe that the facts of the instant case bring it within the rule of the *Buck* and *Clifford* cases. I, therefore, respectfully dissent from the majority opinion.

MURDOCK, ARUNDELL, LEECH, and TYSON agree with this dissent.