Sidney Nathan v. Commissioner. Louis Grossman v. Commissioner. Arthur Klein v. Commissioner. Edwin Rosenberg v. Commissioner.
Nathan v. Commissioner
Docket Nos. 102726, 102727, 102728, 102730.
United States Tax Court
1943 Tax Ct. Memo LEXIS 302; 2 T.C.M. (CCH) 45; T.C.M. (RIA) 43232; May 14, 1943
*302 1. On the facts it is held that petitioners' wives, and several trusts created for the benefit of their children, acquired bona fide interests, as limited partners, in a limited partnership of which petitioners were members and which succeeded a former general partnership consisting only of the petitioners. 2. The fact that one of the purposes of the admission of the limited partners was to effect reduction in petitioners' income tax liabilities held not to require taxation to them of distributive shares of profits of limited partners where other legitimate purpose existed, and interests of limited partners were actually as well as nominally their property, and not property of petitioners. 3. In 1936 one of the petitioners created a trust for the benefit of his minor daughter, naming himself and his wife trustees. The trust instrument directs the trustees to accumulate the income during the minority of the beneficiary, thereafter to pay her the income so accumulated and the income subsequently earned, until she attain the age of 35 years, and then to pay her the principal. If the daughter should die before attaining majority, the trust is to terminate and the accumulated *303 income and corpus to become the sole property of petitioner's wife. The trustees are granted broad power over the investment of trust funds and the management of the trust estate. In their discretion they may apply accumulated income and corpus to meet any emergency affecting the welfare of the minor beneficiary, provided neither she nor the trustees are reasonably able to meet the emergency by the use of their separate resources. Two of the other petitioners at the same time created identical trusts for their children. Held, the wives are persons having substantial adverse interests within the intendment of sections 166 and 167 of the Revenue Act of 1936. Held, further, trust income is not taxable to the petitioners under section 22(a). George H. Engelhard, Esq., Douglas M. Amann, Esq., and David A. Goodkind, C.P.A., 1 Madison Ave., New York City, for the petitioners. George R. Sheriff, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These proceedings, duly consolidated, involve income tax deficiencies determined by the Commissioner as follows: Docket
Taxable
Taxable
No.
Year 1936
Year 1937
102726
$19,983.70
$22,399.72
102727
20,124.11
22,589.31
102728
11,505.45
13,773.29
102730
20,386.36
21,895.53
*304 The issue common to all the proceedings is whether the petitioners are taxable with amounts reported by their respective wives on the individual returns filed by the wives, as income from their distributive shares of profits of a partnership. In all but Docket No. 102728, there is also the issue whether the petitioners are taxable with amounts reported on fiduciary returns filed for trusts, created by them for their respective minor children, as income from the distributive shares of profits of those trusts in the same partnership. Findings of Fact We set forth first those facts which have equal application to all of the proceedings, and those which, in all material respects, are the same in each. Facts having application only to a particular proceeding are separately found. 1. Prior to October 1, 1936, the petitioners were engaged in business as equal general partners under the firm name of Glensder Textile Co. A dissolution agreement was entered into effective as of the close of business on September 30, 1936, and on the same day a new agreement was executed, as hereinafter shown, under which a limited partnership, also known as Glensder Textile Co., was formed. In so far as *305 the evidence concerns the history and formation of the limited partnership, it establishes the same facts as were found in the proceeding of Glensder Textile Co., [Docket No. 102729], 46 B.T.A. 176. Accordingly, the findings of fact set forth in the report of that proceeding are incorporated herein by reference. In so far as material to the issues, they may be summarized as follows in this numbered paragraph: Pursuant to the agreement for dissolution of the old firm, all partnership assets were transferred to the newly-formed limited partnership, to be used in the carrying on of its business in accordance with the terms of the limited partnership agreement. Parties to the latter agreement were the petitioners; their respective wives, namely, Rose Nathan, Hattie Grossman, Bertha L. Rosenberg and Helen Klein; and Rose Nathan and Sidney Nathan, as Trustees for Marjorie Nathan; Hattie Grossman and Louis Grossman, as trustees for Marilyn S. Grossman; Hattic Grossman and Louis Grossman, as trustees for Samuel M. Grossman; Bertha L. Rosenberg and Edwin Rosenberg, as trustees for Frederick Rosenberg; and Bertha L. Rosenberg and Edwin Rosenberg, as trustees *306 for Edwin A. Rosenberg. The petitioners became the general partners of the limited partnership. All other parties to the agreement were constituted limited partners. Each general partner agreed to contribute $25,000 to the capital of the new firm, with the exception of Klein, whose agreed contribution was $50,000; and each agreed that his share of the profits and losses should be 1/12th, with the exception of Klein, whose share was 1/6th. The general partners each agreed to bear 1/4th of all lossess in excess of the capital contributions of the limited partners. Each of the wives, and the trustees for Marjorie Nathan, agreed to contribute $25,000 to capital, and each was to have a 1/12th share in profits and losses. The agreed contribution of each of the trusts for Marilyn S. Grossman, Samuel M. Grossman, Edwin A. Rosenberg and Frederick Rosenberg, was $12,500. Each was to have a 1/24th share in profits and losses. None of the limited partners is to bear any share in losses in excess of his capital contribution. The period of existence of the partnership is from October 1, 1936, to December 31, 1937, and from year to year thereafter, terminable upon notice, as provided in the agreement, *307 on December 31 of any year. Additional limited partners may be added upon consent of the general partners. Limited partners' interests are assignable, in whole or in part, and the limited partners are empowered to confer upon their assignees the rights of substituted limited partners as provided by the New York partnership law. Each general partner is to receive an annual salary of $15,000 in addition to his share of profits. All partners are to receive interest on their contributions and on profits not withdrawn at the rate of 4 per cent per annum. Provision is made for continuation of the business in the event of death of a general partner, and for the manner of liquidation of his interest in the business. Each of the general partners is to render substantially the same services to the limited partnership which he had previously rendered to the old firm. A certificate of limited partnership, containing in general the same provisions as the partnership agreement, was filed with the clerk of the Supreme Court of New York County, New York. The partnership agreement was carried out, and the business was thereafter carried on in accordance with its terms. 2. The stated net worth of *308 the old firm, expressed as the book value of tangible assets less liabilities, was $300,395.21. Upon the transfer of its assets to the new firm, it was agreed by all parties that the excess of the respective interests of the petitioners in the net worth of the old firm over the amounts of their several capital contributions to the new firm, should be credited to their individual accounts on the books of the new firm. The amounts of the credits were to be subject to withdrawal by the four individuals. The agreement was carried out. As a result, the entire interest of each partner in the net worth of the old firm was entered in the books of the new firm under a loans payable account. Under date of October 1, 1936, $25,000 of each of such entries was transferred to capital (except in the case of Klein, whose contribution was $50,000), and under date of December 31, 1936, the balances were transferred to the drawing accounts of the respective petitioners in the followiig amounts: Sidney Nathan
$47,499.29
Louis Grossman
56,975.67
Arthur Klein
24,314.09
Edwin Rosenberg
46,606.16 No withdrawals against such excess credits were made by any of the petitioners prior to October *309 31, 1936. 3. At the time of the formation of the limited partnership, the petitioners had no need of additional capital for their business, nor did they want new partners in order to obtain their services. Their business, however, had been growing increasingly profitable for some years past, distributable profits having increased from about $128,500 in 1932 to about $243,600 in 1935. Their individual tax liabilities had increased accordingly. They were desirous of effecting tax reductions, and also of protecting their families by isolating some of their earnings from the hazards of the business. At one time, incorporation had been considered as a means of accomplishing the desired ends, but such a plan was abandoned upon the advice of an accountant that it might entail unfavorable tax consequences. During the time that formation of the new partnership was under consideration, a member of a firm of accountants retained by the petitioners expressed the opinion that it would be preferable if the petitioners' wives made their contributions to capital from funds of their own, rather than with money furnished by the petitioners, and also advised that the approval of counsel be obtained *310 before the consummation of any plan. Subsequently, another accountant was retained. Upon his approval, and that of an attorney, the plan actually adopted was agreed upon. 4. Distributable profits of the old firm from January 1, 1936, to September 30, 1936, had been $136,725.40, of which each of the petitioners was entitled to a one-fourth share, or $34,181.35. Ordinarily, the volume of business around the latter part of the year, during the Christmas season, was larger than during other seasons of the year. However, the petitioners considered theirs a novelty business, the seasonal successes of which were dependent to a large extent on their ability to anticipate rapidly fluctuating style changes. There had been years when spring business was good and Christmas business was relatively poor. At the time of formation of the new firm, a profitable Christmas business for 1936 was expected and hoped for, although the orders for Christmas merchandise had not as yet been received, and were not expected until some time in November. In fact, 1936 fall and winter business proved successful. Distributable profits earned during the three-month period ended December 31 amounted to $265,140.11, *311 or very nearly double the amount earned during all of the first nine months of that year. 5. Both before and after the formation of the new firm, it was the practice of the petitioners to leave a portion of each year's profits in the business in order to avoid the necessity of borrowing, should additional working capital be needed. 6. The petitioners continued in control of the management of the business after formation of the limited partnership, neither their wives nor the trusts having any voice in the conduct of its affairs. 7. The petitioners would not have been willing to permit other persons outside their families to acquire partnership interests, on the same terms as those under which their wives and the trusts for their children acquired such interests. 8. The trusts named as limited partners in the partnership agreement were all created by instruments dated September 30, 1936, and on that day each of the three petitioners who created trusts transferred to himself and his wife as trustees the money comprising the trust estates. The ages of the minor beneficiaries and the amount transferred to the trust for each were as follows: Amount
Beneficiary
Age
Transferred
Marjorie Nathan
14 years
$26,000
Samuel M. Grossman
15 years
13,000
Marilyn S. Grossman
9 years
13,000
Frederick Rosenberg
15 years
13,000
Edwin A. Rosenberg
12 years
13,000
*312 The trust instruments are all identical in their terms, except for the beneficiaries and trustees named therein. In brief, the material provisions of each direct the trustees to invest the trust funds and keep the same invested for the benefit of the child named therein, to accumulate the income until he attain his majority, then to pay him the income so accumulated and the income thereafter accruing until he arrive at the age 35, and then to pay him the principal. Each provides further that if the beneficiary die before attaining the age of 21, trust principal and all accumulated income shall be paid to the grantor's wife, or, if she shall have died, to her legal representatives. Upon the death of the life beneficiary after attaining 21, trust corpus is to be distributed as he shall appoint by will, or, in default of appointment, to the persons entitled to share in his estate under the laws governing intestate distributions. The trustees have power in their discretion to pay all or part of the principal to the beneficiary at any time after he attain 21. They are authorized, in their discretion, to invest trust funds in any business, whether conducted by them or by others, without *313 regard to its legality for investment of trust funds, to sell, lease or mortgage trust property upon terms and conditions they deem advisable, and to determine whether and to what extent proceeds of sales of stock subscription rights, and whether and to what extent extraordinary dividends received by them, shall be considered principal or income. Paragraph (8) of each instrument is as follows: Whenever in the opinion of the Trustees an emergency shall have arisen affecting the welfare of the Beneficiary either directly or indirectly, and, by reason of such emergency, the best interest of the Beneficiary shall, in the opinion of the Trustees, require an expenditure or expenditures which in the Trustees' opinion the Beneficiary shall not be reasonably able to meet out of such resources as may be available to the Beneficiary, and which the Trustees shall not be able to meet out of their individual property, the Trustees shall have the right to pay over to the Beneficiary or to apply for her [his] benefit such parts of the principal of the Trust Fund or of any accumulated interest as they may deem necessary to meet such emergency. The Trustees' determination as to the existence of any *314 of the facts upon which the exercise of the foregoing discretion is conditioned shall be conclusive and shall not be questioned. Paragraph (14) provides: The Trustees may keep the securities contained in the Trust Fund in bearer form or registered in the name of a nominee without indicating that they hold the same in a fiduciary capacity. No power of modification or revocation is reserved in any of the instruments. 9. A bank account was opened for each trust, in which the trustees deposited the checks for the amounts of the respective gifts in trust made by the petitioners. On October 1, 1936, the trustees for each trust delivered to Glensder Textile Co. checks for the respective contributions of the trusts to firm capital in the amounts specified in the partnership agreement. On the same day, the wife of each petitioner delivered a check to Glensder Textile Co. for the amount of her agreed contribution to capital. 10. The opening entries in the capital accounts of the petitioners and the several limited partners on the books of the new firm were credits of their respective contributions in the amounts specified in the partnership agreement. Thereafter distributive shares of *315 profits of the several partners were credited to the same accounts. The aggregate of the amounts credited to each petitioner, his wife, and the trust or trusts for his child or children, was equal in each period to one-fourth of the total distributable profits shown by the books for that period. The aggregate of the amounts shown on the partnership returns as the distributive share of profits of each petitioner, his wife, and the trust or trusts for his child or children was equal to one-fourth of the amount reported thereon as total distributable profits. On the individual and fiduciary returns filed for each period, the amounts reported as income from the partnership corresponded in all instances with the distributive shares reported on the partnership returns, except that the petitioners, in addition, each reported salary received in the amounts of $3,750 for the period ended December 31, 1936, and $15,000 for 1937. 11. During 1937, withdrawals by the wives and by the trusts created for the petitioners' children equalled the amounts credited to them, respectively, for the period ended December 31, 1936. During 1938, withdrawals by Rose Nathan, Hattie Grossman, Helen Klein, Bertha *316 L. Rosenberg and the Marjorie Nathan Trust were, in each case, about $7,500 less than the profits credited to their respective accounts for the preceding year, and withdrawals by the two Grossman and two Rosenberg trusts were, in each case, about $3,800 less than profits credited to their respective accounts for the preceding year. With the exception of Rose Nathan and the Marjorie Nathan Trust, all of the limited partners withdrew amounts exceeding their undrawn 1937 balances during the first three months of 1939. In the cases of Rose Nathan and the Marjorie Nathan Trust, withdrawals during the first five months of 1939 exceeded their undrawn 1937 balances. 12. All actual distributions to the trusts created by the petitioners Nathan, Grossman and Rosenberg were deposited in each instance to the credit of the particular trust in the bank account maintained for it by the trustees. From time to time, withdrawals of some of the amounts deposited were made, but only for the purchase of investments for the trusts, the balances being permitted to remain on deposit. No part of trust corpus, or current or accumulated income has ever been used for the support, maintenance or education of *317 any of the infant beneficiaries. 13. During the summer of 1936, each of the petitioners had discussed with his wife the plan for the formation of the limited partnership, and the proposal under which the wives and the trusts would be taken in as partners. Each recommended to his wife that she agree to participate. The amounts of the several capital contributions were discussed. It was pointed out to the wives that the respective shares of profits of the limited partners would be their own money, free of risks of the business, and that the losses which a limited partner might sustain would not exceed the amount of the capital contribution. 14. Since the formation of the limited partnership, the accountant retained by the petitioners to consummate the plan has assisted in the preparation of partnership returns, the individual returns of the petitioners and their wives, the fiduciary returns filed for the trusts, and in the filing of claims for refund arising out of partnership affairs. Facts having application only to a particular docket number are as follows: A. Sidney Nathan - Docket No. 102726 The petitioner is a resident of the State of New York. His income tax return for *318 1936, executed by another person under a power of attorney attached to the return, was filed with the collector for the third district of New York. A return for 1937, to which no power of attorney is attached, was executed on petitioner's behalf and at his request by "Edwin Rosenberg (Agent)," and was filed with the same collector. Rose Nathan borrowed from Bankers Trust Company of New York to obtain funds for the payment of her capital contribution. Petitioner, who was known at that bank, accompanied her at the time arrangements were made for the loan. On September 29, 1936, she received the bank's check for $25,000, executing her promissory note for the same amount, and pledging securities which she personally had owned for some years previous to that time. The check was made payable to Rose Nathan and was endorsed by her to the order of Glensder Textile Co. On December 31, 1936, petitioner gave his wife the sum of $20,000, which she immediately applied in reduction of her indebtedness to the bank. The balance of $5,000 was paid by check of Rose Nathan on January 3, 1937. A gift tax return for 1936, executed for the petitioner by an accountant as "Agent," and filed with the collector *319 for the third district of New York, reported petitioner's gift of $26,000 to the trust for Marjorie Nathan, and the gift of $20,000 to Rose Nathan. Petitioner knew that the return was being prepared and filed on his behalf, but does not recall executing any power of attorney in that connection. No such power is attached to the return. The income tax return for the Marjorie Nathan trust for 1936 was executed by the accountant under a power of attorney signed by petitioner and his wife and attached to the return. The return for 1937 is endorsed on its face as the return of Sidney Nathan, trustee for Marjorie Nathan, the name of Rose Nathan not appearing thereon. It was executed by "Edwin Rosenberg (Agent)," but no power of attorney is attached. Claims for refund of income tax paid by the trust for 1936 and 1937, subsequently filed with the collector for the third district of New York, were endorsed on their faces as claims of Sidney Nathan, trustee for Marjorie Nathan, and were signed by Sidney Nathan, Trustee, the name of Rose Nathan not appearing thereon. Rose Nathan's individual income tax return for 1936 was executed by the accountant under a power of attorney attached to the *320 return. Her 1937 return was executed by "Edwin Rosenberg agent," but no power of attorney is attached. Rose Nathan deposited the money she received as her share of partnership profits in her own bank account, spending it for investments on her own account, or for such other purposes as she wished. She made no gifts of money to her husband, and did not pay household expenses with her own funds. Petitioner did not know for what purposes his wife expended profits distributed to her, and made no attempt to influence her in their use. B. Louis Grossman - Docket No. 102727 The petitioner is a resident of the State of New York. He filed his income tax returns for the taxable years with the collector for the third district of New York. Hattie Grossman obtained the funds for payment of her own capital contribution by borrowing $25,000 from Bankers Trust Company of New York. She was not known at the bank, but Edwin Rosenberg, her husband's partner, was acquainted with some of its officers, and accompanied Hattie Grossman at the time the arrangements were made. She executed her own promissory note for $25,000, and, as collateral, pledged securities owned by her husband and loaned to *321 her by him for that purpose. On September 29, 1936, she received the bank's check in the same amount, which she endorsed and delivered to Glensder Textile Co. She owned but little property in her own right. The petitioner expected that his wife's indebtedness would be paid either out of her share of partnership profits, or by himself. Hattie Grossman knew that her husband would pay the debt for her, if she did not receive sufficient profits with which to pay it herself. In fact the petitioner did furnish the funds for payment, giving his wife $20,000 on December 30, 1936, and $5,000 on January 25, 1937. On January 29, 1937, she issued her check for $25,021.53 in full payment of the loan and interest. The petitioner filed a gift tax return for 1936, on which he reported the two gifts of September 30 to the trusts, and the $20,000 gift of December 30 to Hattie Grossman. The 1936 and 1937 income tax returns for the trust for Marilyn S. Grossman and that for Samuel M. Grossman were all endorsed as the returns of Louis Grossman, trustee, and were executed by Louis Grossman, trustee for the particular beneficiary. None was signed by Hattie Grossman and her name did not otherwise appear *322 on any of them. Claims for refund of income taxes paid by the trusts for 1936 and 1937, subsequently filed with the collector for the third district of New York, were similarly endorsed and executed, the name of Hattie Grossman not appearing thereon. Hattie Grossman deposited the checks for her distributive share of profits of Glensder Textile Co. in her own bank account. She drew against the account for the purchase of investments for herself, and for such other purposes as she wished. There was no agreement between her and the petitioner as to how the money was to be used. She made no gifts to him of money, or securities. He knew, only in a general way, to what uses her funds were put, and made no attempt to influence her in that regard, except by way of advising her as to her investments when she asked advice. C. Arthur Klein - Docket No. 102728 The petitioner is a resident of the State of New York. He filed his income tax returns for the taxable years with the collector for the third district of New York. On September 30, 1936, the petitioner gave to his wife his check for $25,000, which she endorsed and delivered to Glensder Textile Co., as her contribution to capital. *323 Petitioner filed a gift tax return for 1936 on which he reported the gift of the $25,000. Helen Klein used the money distributed to her by the partnership for whatever purposes she wished. There was no agreement or understanding between her and the petitioner with regard to her disposition of the shares of profits received by her, and petitioner made no attempt to keep track of his wife's expenditures, or to interfere with her in the use of the money. The petitioner and his wife had no children at the time the limited partnership was formed. A child was born to them in the latter part of 1937 or early 1938, whereupon Helen Klein transferred one-half of her one-twelfth interest in Glensder Textile Co. to herself and her husband as trustees for the child. In 1940, petitioner and his wife had decided to separate. Petitioner, feeling that his wife was lax about money matters and would be better protected if he handled them for her, asked her for $14,000 to invest on her account. She gave him that amount, and petitioner invested it for her. They subsequently separated and were divorced. An agreement was then executed under which the petitioner obligated himself to make monthly payments *324 to Helen Klein for her support and that of the child. At the same time, and because of the separation, she transferred her remaining 1/24th interest in Glensder Textile Co. to the petitioner. The petitioner, being desirous of providing her with some cash in addition to the amounts she would receive under the separation agreement, and feeling that she was entitled to more for her partnership interest than its original cost, paid her $25,000 for the transfer. After the divorce the child resided with his mother. The trust still holds a 1/24th interest in Glensder Textile Co. Some of the trust funds have been expended for the education of the child, and for other undisclosed purposes. D. Edwin Rosenberg - Docket No. 102730 The petitioner is a resident of the State of New York. He filed his income tax returns for the taxable years with the collector for the third district of New York. In 1935, the petitioner had given his wife a one-half interest in an investment management account owned by him in Fiduciary Trust Company of New York. He had reported the value of the interest as $21,793.80 on his gift tax return for 1935. A statement of the trust company valued the securities and *325 cash in the account on August 15, 1936, at over $88,000, and no substantial change in the corpus of the account occurred between that time and September 30, 1936. On that date Bertha L. Rosenberg borrowed $25,000 from Fiduciary Trust Company, giving her promissory note for that amount. The investment account was charged with the amount of the loan, and her note entered therein as an asset. Bertha L. Rosenberg endorsed the check for the loan to the order of Glensder Textile Co. Payments of $5,000, $10,000, and $5,000 on account of the note were made by Bertha L. Rosenberg in the months of January, March and November of 1937. Final payment of $5,000 was made December 6, 1937. The petitioner made gifts to his wife in order to enable her to make some of the payments. Others were made from partnership profits distributed to her. The petitioner filed a gift tax return for 1936 on which he reported gifts to his wife in January and July of that year, aggregating $9,000, another of $1,000 on November 30, 1936, and the gifts made on September 30, 1936, of $13,000 to each of the two trusts created for his children. The 1936 and 1937 income tax returns for the trust for Frederick Rosenberg *326 and the trust for Edwin A. Rosenberg were all endorsed as the returns of Edwin Rosenberg, trustee, and were executed by Edwin Rosenberg, trustee for the particular beneficiary. None was signed by Bertha L. Rosenberg and her name did not otherwise appear on any of them. Claims for refund of income taxes paid by the trusts for 1936 and 1937, subsequently filed with the collector, were similarly endorsed and executed, the name of Bertha L. Rosenberg not appearing thereon. Bertha L. Rosenberg deposited the checks for her distributive share of profits of Glensder Textile Co. in her own bank account. Petitioner had no power to draw against the account, and there was no agreement or understanding between him and his wife regarding her disposition of the funds. Prior to October 1, 1936, she had drawn checks against an account maintained in the joint names of herself and the petitioner for the payment of household expenses. After she began receiving money from Glensder Textile Co. she paid such expenses, amounting to about $200 per month, with checks drawn on her own account. The petitioner paid expenses, other than actual household expenses, with his own funds. These other expenses included *327 rent and taxes, domestic help, expenses of educating his sons at private schools and colleges and the purchase of any automobiles. His wife made no gifts of money to him from her distributive share of profits of the partnership. The petitioner purchased a new home for his family in 1938. Some months thereafter his wife received a sum in excess of $10,000, in connection with the distribution of her deceased father's estate. She gave $10,000 to the petitioner at that time, out of the money so received, to be applied toward the cost of the new home. Opinion The questions here presented for decision are whether there should be included in taxable income of the respective petitioners either the amounts credited to their wives of the amounts credited to the trusts created for their children, as their respective distributive shares of profits of Glensder Textile Co. In support of his determination that petitioners are taxable with all of such amounts, the respondent makes the following contentions: that the transaction resulting in the formation of the limited partnership was lacking in bona fides; that it was carried out for the sole purpose of attempting to save taxes; that each *328 petitioner remained the substantial owner of a one-fourth interest in the partnership; and that the wives and the trusts did not acquire capital interests in the partnership, the shares of profits credited and paid to them flowing from mere assignments by the petitioners of a portion of their shares of the profits, and not from any proprietary interests of their own. With respect to profits credited to the trusts he advances additional arguments. First, that the petitioners retained such substantial ownership and control of the trust corpora as to render trust income taxable to them under the provisions of section 22(a) of the Revenue Act of 1936; [1] and second, that each petitioner had power in conjunction with a person not having a substantial adverse interest, namely his wife, to apply both corpus and income to the satisfaction of his own legal obligations, and therefore that income is taxable to him under sections 166[2] and 167[3] of the same Revenue Act. *329 The petitioners contend that the formation of the limited partnership was a real rather than a sham transaction, and that, in substance as well as in form, the wives and the trusts acquired actual capital interests, free from his control. In answer to the separate contentions with regard to trust income, they deny the retention of such control over the disposition of corpora or income as to render income taxable to them under section 22(a), and, as to the applicability of sections 166 and 167, take the position that neither the corpora nor income could be applied in satisfaction of their legal obligations, and that in any event, each wife holds a substantial adverse interest, under the terms of the trust instruments. The only real question in connection with the first issue is whether the wives and the trusts for the children actually became partners in the firm of Glensder Textile Co. We have frequently held that there is nothing in the revenue acts to prevent the members of a partnership from taking in their wives, or other members of their families, as partners. See, e.g., Alfred T. Wagner, 17 B.T.A. 1030; Arthur Stryker, 17 B.T.A. 1033; *330 Pugh v. United States, 48 Fed. (2) 600; Jasper Sipes, 31 B.T.A. 709; Walter W. Moyer, 35 B.T.A. 1155; Clinton Davidson, 43 B.T.A. 576 and Justin Potter, 47 B.T.A. 607. Nor is the source of the contributions which new members make to the capital of the firm of consequence, if in fact they acquire actual partnership interests. In the Pugh, Wagner, Stryker, Sipes, Moyer and Potter cases, either the partnership interest itself, or the funds with which it was purchased, had been the subject of direct gift by an existing partner to the new member, the gifts being from husband to wife or children. In Albert G. Dickinson, 23 B.T.A. 1212, we considered this question under substantially the following facts: A husband in 1920 dissolved a corporation of which he was the sole owner, which was engaged in the manufacture and sale of weather stripping. He agreed with his wife and daughter that the three would be equal partners in the business. No written articles of partnership were drawn up. The *331 wife and daughter rendered no services to the business. The business was rapidly expanding, the petitioner, his wife and daughter had independent incomes and found it feasible to let the profits remain in the business. It was not until two years later that a certificate was filed, as required by the state law, showing the formation of a partnership. Profits credited to or distributed to the petitioner's wife and daughter were never thereafter received by him directly or indirectly. The Commissioner determined that the business was a sole proprietorship and that the income was taxable to the petitioner. We held that the petitioner had given a one-third interest each to the wife and daughter and that they were taxable on the income. With reference to the wife and a contention as to whether she could be a partner with her husband under state law, we said: In the instant case, after petitioner had given his wife a one-third interest in the business, such interest became the absolute property of the wife to do with as she pleased "in the same manner and with like effect as if she were unmarried." (Sec. 11485 C.L. Mich., supra.) This being true, a court of equity would hold that she *332 was the owner of one-third of the income from the business, and under Poe v. Seaborn, 282 U.S. 101, being the owner of the income was entitled to include the same in her returns. * * * [1219] In Clara B. Parker, Executrix, 30 B.T.A. 1231, we considered a situation in many respects quite similar to that here involved. A former partnership between two parties was succeeded by one between both parties, their wives and the mother of one of the former partners. Though the partnership contract recited a contribution of certain amounts of money by each, no cash was, in fact, contributed, notes being given. The women never had anything to do with the actual business, except that one of them at times rendered her husband some assistance. The men continued to manage the business, each being entitled to drawing certain amounts per month with no provision for withdrawals by the other partners. As in this case, the Commissioner contended that there was no bona fide partnership and the profits were taxed to the two men. We held that the wives and the mother were bona fide partners. In Glenn M. Harrington, 21 B.T.A. 260, *333 two partners took their wives into the firm, the men remaining the sole managers of the business, and drawing a stated amount each month. Neither wife contributed anything to the partnership, except that about two years before one wife had advanced her husband $1,500, which pooled with his savings, helped pay for household furniture and his interest in the firm. Neither wife took any active part in the conduct of partnership affairs. No capital account was set up on the firm's books for either wife, and no entries were made as to them, except to credit them with their shares of profit, and charge their withdrawals against their profits accounts. We denied the Commissioner's contention that all income was taxable to the husbands. In B. M. Phelps, 13 B.T.A. 1248, two husbands who had been partners for several years took their wives in as partners. The wives made no capital contributions and rendered no services to the partnership. One wife deposited her share of the profits in her individual account, the other in a joint account with her husband. No written partnership agreement was executed. The Commissioner added each wife's profits to the income of *334 her husband. We held this to be error. N. H. Hazlewood, 29 B.T.A. 595, involved a husband who had previously conducted a business, but later made his wife and their daughters equal partners, they contributing nothing, neither property nor services. We held that the income should be divided among the four partners, though no capital account nor investment account for the partners was set up, and though in one year the husband used practically all net profits to purchase a home for the family and in another year gave to his wife and daughters, for their shares of profits, notes which he never paid. In the instant case, the old firm was dissolved; all parties executed a new partnership agreement, by which the amounts of their several capital contributions and the respective percentages of interest in the business were fixed; the agreed contributions were paid, and appropriately reflected on the books of the new firm; and profits of the business were thereafter distributed in accordance with and in the proportions specified by the agreement. In view of those circumstances, we find it impossible to view the transaction as effecting mere assignments by *335 the petitioner of a portion of his income. The situation here is not comparable with that in cases where the taxpayer himself did not in practice recognize the entity set up by him; or it was dissolved as soon as the tax saving was accomplished. Here a partnership was in fact and in law established, recognized and continued. There is evidenced a plain intention that both the wives and the trusts be constituted partners. We think that that intention was effectively carried out. Section 107 of the New York Partnership Law, McKinney's Consol. Laws of N. Y., Ann., Book 38, is as follows: § 107. Nature of interest in partnership. A limited partner's interest in the partnership is personal property. It follows that upon their having become partners, the petitioners' wives and the trusts necessarily became vested with capital interests in the business. Though the respondent does not raise the question, we note that we have heretofore recognized that a trust may become a member of a partnership in New York. In Isaac W. Frank Trust of 1927, 44 B.T.A. 934, (942), we concluded that a trust could be a member of a partnership. Though there a partnership under *336 Pennsylvania law was involved, that state and New York have the Uniform Partnership Law, and we assume that no particular differences exist. See also Charles E. Ives, 29 B.T.A. 822, 832, and cases there cited; Crehan v. Megargel, 234 N. Y. 67; 136 N.E. 296, involving a limited partnership. The respondent has ruled that a married woman is capable of entering into partnership with her husband under New York law. G.C.M. 5761, C.B. VIII-1, p. 109, citing Suan v. Caffe, 122 N. Y. 308; 25 N.E. 488. The respondent points to the fact that control of the business remained exclusively in the hands of the general partners, and that the wives and trusts contributed no services, as indications that real partnership interests were not created. But even in an ordinary partnership control may be lodged in one or more of the partners to the exclusion of others. Richard H. Oakley, 24 B.T.A. 1082; Walter W. Moyer, supra.In the case of a limited partnership, *337 the immunity of the limited partner's separate estate from liability to creditors of the business is conditioned upon his refraining from taking any part in its management. Uniform Limited Partnership Act, section 7; New York Partnership Law, section 96; McKinney's Consol. Laws of N. Y., Book 38. See also Lanier v. Bowdoin, 282 N. Y. 32; 24 N.E. (2d) 732. In such a limited partnership the lack of services by the limited partners obviously means less than in general partnerships, in truth, means nothing, within the law of limited partnership, for such a condition is one of the objects of limited partnership. Nor can we agree with the respondent that the formation of the limited partnership was "nothing but a complicated series of legalistic formalities" having "no purpose other than the assignment of income to close family members in order to reduce taxes." Gregory v. Helvering, 293 U.S. 465, upon which he relies, itself recognizes the principle that a taxpayer may employ whatever legal means he has at hand to effect reductions in taxes. The distinction between *338 the type of tax evasion transaction, condemned by the Gregory case, and that with which we are presently concerned was plainly stated by the Circuit Court of Appeals for the Second Circuit in Chisholm v. Commissioner, 79 Fed. (2d) 14, from which we quote: * * * In Gregory v. Helvering, supra, 293 U.S. 465, 55 S. Ct. 266, 79 L. Ed. 596, the incorporators adopted the usual form for creating business corporations; but their intent, or purpose, was merely to draught the papers, in fact not to create corporations as the court understood that word. That was the purpose which defeated their exemption, not the accompanying purpose to escape taxation; that purpose was legally neutral. Had they really meant to conduct a business by means of the two reorganized companies, they would have escaped whatever other aim they might have had. whether to avoid taxes, or to regenerate the world. There is one circumstance, however, which we deem worthy of note. The petitioners had been advised by the accountant formerly retained by them as an advisor, that it would be preferable if the wives made capital *339 contributions with funds of their own, rather than with funds furnished by their husbands. It is apparent that, at some time, gifts by the husbands to the wives had been considered, and in the case of Klein, an actual gift of the money was made. In each of the other instances, the petitioner gave his wife sufficient money to enable her to satisfy the greater part of her debt soon after its incurrence. We think that was always intended, and that the circumstances justify the inference that resort was had to the loan transaction in an effort to conceal the true intention. It appears to have been an attempt by the petitioner to accomplish by indirection that which he thought could not be accomplished directly. However, even though we disregard form in favor of substance, and consider each transaction as a gift ab initio, that does not change the result to be reached in this case, for as we have pointed out, our decisions turns on the fact that transfers of actual partnership interests were, in fact and in law, effected, and is not concerned with the manner in which they were effected. The situation is not essentially different from that in several of the cases cited above where *340 partnership was recognized by us. The petitioners may have adopted the means they did in order to avoid the payment of gift taxes. Respondent contends that this is the fact. If the interests of the wives and the trusts were acquired for less than fair value, it may be that a gift tax liability arose. That question is neither before us, nor does it bear on the present issue. Cf. Otto Peterson, 42 B.T.A. 102. In deciding as we have, we are not unmindful of the Supreme Court's admonition in Helvering v. Horst, 311 U.S. 112, that "The dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid." But here the distributive shares of profits of the limited partners can not be said to have been earned, or the right to its receipt created, by the petitioner, any more than by any one or more of the other managing partners. Profits were the product of the combination of the labors of the general partners, and the employment of the capital of the partnership. Cf. Burnet v. Leininger, 285 U.S. 136. *341 Profits, obviously, were large in comparison to net worth of tangible capital assets, but it must be remembered that that net worth represented only book value, and included nothing for intangible assets or good will. Any determination of actual capital worth must be based upon fair value of tangibles, and, if it exists, must include a fair value for good will. It is apparent, in this case, that there was good will, and that its value was substantial. The right of the limited partners to receive distribution of their shares of profits was an attribute of, and flowed directly from, their capital interests. Each of these was property which was irrevocably theirs, in substance as well as in form. The evidence that the rights to which the wives were entitled under the partnership agreement are exercised by them, free of control of the petitioners, is uncontradicted. They have the full legal right to sell, or otherwise dispose of, the whole or part of their interests to such persons and at such time as they may wish. The interests of the limited partners were particularly made assignable, in whole or in part, with right to substitute the assignee as limited partner, as provided by the *342 local law of limited partnership. Can it be doubted that in case of appointment of some trust company as guardian for one of the minor-beneficiaries of the trusts, which are limited partners, such guardian would not, and would not by the Probate Court be required to insist upon and preserve all of the minor's legal rights, regardless of the family situation here involved? Or in case of separation and litigation between any active partner and his wife, could any successful attack be made upon the reality of the legal right in the wife to her share as a limited partner? We think the answer to both queries must clearly be in the negative. The facts involved in Mead v. Commissioner, 131 Fed. (2d) 323, and in those in Schroder v. Commissioner, 134 Fed. (2d) 346, are, in these respects, clearly distinguishable. Those cases, therefore, are not controlling here. We hold that the petitioners are not taxable with the amounts credited to their wives as distributive shares of profits of Glensder Textile Co.
What has been said with respect to the income of the wives is equally applicable to the income of the trusts, except as to the *343 separate contentions made by the respondent with respect thereto. The first of these is that their creations were family transactions, subject to careful scrutiny, that petitioners have not treated them with any degree of seriousness, and hence that they are devices too thin to avoid the taxation of trust income to them under section 22 (a), supra. We do not think that the evidence establishes such lack of substance, or such loose and inexact administration of the trusts as to bring this case within the principles announced in William C. Rands, 34 B.T.A. 1107, and the similar cases of Benjamin F. Wollman, 31 B.T.A. 37; Estate of A. C. O'Laughlin, 38 B.T.A. 1120, affd., 110 Fed. (2d) 448; and Raoul H. Fleischmann, 40 B.T.A. 672, upon which the respondent relies. With respect to petitioner Nathan, he urges that the consistent making of refund claims and returns by the petitioner without the concurrence of Rose Nathan, the co-trustee, that she knew nothing about the returns or affairs of the trust, that petitioner blindly followed *344 whatever an accountant told him to do, and that he knew little about the returns he signed, are facts establishing his conclusion that the trust was not regarded with any degree of seriousness by the petitioner, and, therefore, should not be so regarded by us. But the uncontradicted testimony is that Rose Nathan took active part in the management of the trust, discussing with the petitioner all investments of trust funds, endorsing and depositing checks payable to the trust, and signing, with her husband, all checks for the disbursement of trust funds. She, ordinarily, was the one who placed the orders for investments. And evidence that an accountant advised and assisted the petitioner and his wife in tax matters, and prepared their returns will not support a conclusion that whatever he advised was blindly followed, or that petitioner knew little about the contents of the fiduciary returns. We attach but little significance to the fact that the 1937 return and two subsequent claims for refund, all filed on behalf of the trust, did not name petitioner's wife as one of the trustees. Nor is the fact that the 1937 return has no power of attorney attached, although executed by one who *345 styled himself an agent, helpful on the issue. The respondent's contention and the situation are not materially different in the case of the other petitioners. The respondent's argument for taxing trust income to the petitioners does not expressly look for support to the rule of Helvering v. Clifford, 309 U.S. 331, nor do we think that it could properly have done so. It is true that the fact that a trust is of long duration may be insufficient, of itself, to forestall the application of the Clifford doctrine, where the elements of an intimate family relationship among the parties, and the retention of broad powers of control over the management of trust corpus and the distribution of income, are present. See, e.g., Howard Phipps, 47 B.T.A. 357. But it is also true that the longer the term, the more substantial must be the measure of control reserved by the grantor. Helvering v. Elias, 122 Fed. (2d) 171; Commissioner v. Buck, 120 Fed. (2d) 775; Ellis H. Warren, 45 B.T.A. 379, affd., 133 Fed. (2d) 312. *346 Here the petitioners did grant to themselves and their wives, as trustees, broad powers with respect to administration of the trusts. But the trusts were irrevocable; they contained no provision for alteration or amendment; petitioners had no power to designate persons to or among whom income or corpora should be distributed; and in all probability, they will never again enjoy the beneficial ownership of the assets committed to the trusts. We know of no case which extends, or points to the extension of, the rule of the Clifford case to a situation as markedly distinguishable as this. We do not think that it applies. See Commissioner v. Betts, 123 Fed. (2d) 534; Commissioner v. Branch, 114 Fed. (2d) 985; Jones v. Norris, 122 Fed. (2d) 6; Meyer Katz, 46 B.T.A. 187 (on appeal, C.C.A., 5th Cir.); Stephen Hexter, 47 B.T.A. 483; Robert S. Bradley, 1 T.C. 566. Under paragraph 8 of each trust instrument, the trustees are empowered, upon the existence of the circumstances there specified, to pay *347 such part of trust principal or accumulated income to the beneficiary, or to apply the same for his benefit, as they deem necessary. The specified circumstances are that in the opinion of the trustees an emergency exists affecting the welfare of the beneficiary; that by reason of the emergency the best interest of the beneficiary, in the opinion of the trustees, requires an expenditure of money; that in the opinion of the trustees the beneficiary shall not be reasonably able to meet the expenditure out of such resources as may be available to him; and that the trustees shall not be able to meet the expenditure out of their individual property. Under the last sentence of the paragraph the trustees' determination as to the existence of any of the facts, upon which the exercise of the discretion is conditioned, is conclusive. We think that both logic and the natural construction of the language employed negative the existence of any discretion on the trustees' part to determine the existence of the last of the enumerated facts, namely, their own inability to meet the expenditure out of their individual resources. Logic compels that conclusion for two reasons: first, it is a fact the *348 existence of non-existence of which, in the nature of things, is absolute, independent of any discretion; and second, because any other conclusion would render nugatory the dominant purpose to keep the trust intact for the beneficiary during his minority. It would be necessary only for the trustees to decide that all the facts existed upon which the exercise of the power depends in order to save their individual pocketbooks at the expense of that of the trust. Reasonable construction of the language points to the same result. With the sole exception of this last clause, each of the clauses enumerating the determinative facts contains the phrase "in the opinion of the trustees," or "in the trustees' opinion." In addition, the use of the beneficiary's other resources is further qualified by the phrase "reasonably able to meet," etc. We think that resort to the trust may be had only as a last-ditch measure, and not for the purpose of discharging the parental obligations of the petitioners to support their minor children. It follows that trust income is not to be taxed to them, under the rule of Douglas v. Willcuts, 296 U.S. 1. As stated by the Circuit Court *349 of Appeals for the Sixth Circuit in Suhr v. Commissioner, 126 Fed. (2d) 283: It must also be noted that a change in the grantor's fortunes which might materially lower his standard of living, would lower the standard of living of his family, with a corresponding reduction of the measure of his obligation to support and maintain. * * * So here, since the petitioners are foreclosed from applying trust funds for any purpose until their own assets are gone, the application which they then make may not be said to effect a saving of individual resources which do not exist. Lastly, it should be noted that trust income may not be taxed to the petitioners under sections 166 and 167. Both are limited in their application to cases where the necessary discretion is vested in the grantor or in a person not having a substantial adverse interest in the disposition or distribution. Here the discretion was vested in each petitioner and his wife. Under the terms of the trust, she becomes entitled to receive trust corpus and accumulated income if the beneficiary die before the age of 21. Thus, any distribution to or for the child would be in prejudice of what the wife *350 may enjoy, if the child die within the specified time. The wife's is plainly an adverse interest, and although its enjoyment is dependent upon a contingency, we think it is substantial, within the meaning of the statutory provisions. Jane B. Shiverick, 37 B.T.A. 454; Meyer Katz, supra;Robert S. Bradley, supra.
Decisions will be entered for the petitioners. Footnotes
1. SEC. 22. GROSS INCOME. (a) GENERAL DEFINITION. - "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * ↩
2. SEC. 166. REVOCABLE TRUSTS. Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested - (1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or (2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor. ↩
3. SEC. 167. INCOME FOR BENEFIT OF GRANTOR. (a) Where any part of the income of a trust - (1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or (2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or * * * * *
then such part of the income of the trust shall be included in computing the net income of the grantor. (b) As used in this section, the term "in the discretion of the grantor" means "in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question."↩