GLENSDER TEXTILE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102729. Promulgated January 27, 1942.

*David A. Goodkind, C. P. A.,* and *George H. Engelhard, Esq.,* for the petitioner.

*George R. Sherriff, Esq.,* and *William G. Ruymann, Esq.,* for the respondent.

178

180

182

OPINION.

KERN: Respondent, relying on *Morrissey* v. *Commissioner*, 296 U. S. 344, and the companion cases decided by the Supreme Court on the same day, contends that the petitioner possesses all the eight elements which were said in those cases to characterize an association in corporate form and hence taxable as a corporation; that it is, in short, a group of persons associated in a joint enterprise to carry on a business, possessing centralized control and continuity of existence; that it has transferable shares and limited liability; that it pays dividends or profits to its members in proportion to their respective interests; and, generally, that it has a substantial resemblance to corporate organization.

The revised regulations, already quoted, provide that a limited partnership organized under the Uniform Limited Partnership Act, such as petitioner, may or may not be an association, depending upon its essential characteristics. The line to be drawn is one of fact. Obviously, two or more persons associated together in a general partnership would fall under that well recognized category in the taxing statutes and, since the entity theory is not recognized by the act, its income would be taxed to the individual partners, but at the rates applicable to natural persons. As was said by the Supreme Court, per Brandeis, J., in *Burk-Waggoner Oil Association* v. *Hopkins*, 296 U. S. 110, the "term partnership as used in these sections obviously refers only to ordinary partnerships." The Court then went on to point out that joint stock associations, notwithstanding classification as partnerships under the law of several states, could not be considered as such under the Federal revenue acts because they have a fixed capital stock divided into shares which are represented by transferable certificates and have also other indicia of corporate existence and corporate business effectiveness.

The limited partnership appears to hold a middle ground between the joint stock association and the general partnership, and, as the regulations aptly suggest, the powers of the particular limited partnership under the local statute must first be examined before a line

can be drawn. The limited partnership in the sense of several general partners associated with several limited partners, the ordinary rules of partnership applying to the general partners, but the limited partners having no liability beyond their money actually embarked in the enterprise, was not known to the common law, see 8 Holdsworth, Hist. Eng. Law 196; but is derived from French law and was introduced by statute in New York as early as 1822, in the days of Chancellor Kent. See 3 Kent Com. 35; *Ames* v. *Downing*, 1 Bradf. 321 (N. Y. 1850); 3 Bouvier, Law Dict. (Rawle's 3d Rev., *sub verb.* "Partnership".) The limited partners in such a partnership are also silent partners who have no hand in the management of the business. Other types of limited partnerships exist by statute, it is true, as in Pennsylvania, see Bouvier, *loc. cit.*, in which no member incurs any liability beyond the amount of his contribution. This latter form obviously approaches the confines of a corporation, whereas the former form inclines to that of a partnership, for although the Supreme Court has pointed out in *Burk-Waggoner* v. *Hopkins, supra,* that the individual liability of a partner for the debts of the partnership or association can not be taken as the sole touchstone of classification, it is nevertheless a very important means of discrimination.

Even within the form of limited partnership most generally known, in which general and limited partners are associated together, we may still suppose situations where the resemblance to corporate form would be so substantial as to justify classification of the limited partnerships as corporations. If, for instance, the general partners were not men with substantial assets risked in the business, but were mere dummies without real means acting as the agents of the limited partners, whose investments made possible the business, there would be something approaching the corporate form of stockholders and directors. But, as a practical matter, to suppose such a situation we must also suppose that the limited partners were, in reality, not merely silent partners without control of affairs but were empowered to direct the business actively through the general partners. We suggest this possibility merely to show that designating a partnership as of a particular kind involves no more than applying a particular name, and that the really vital thing, the rights and duties of the partners as between themselves and the public, may vary as much as the legislatures of the several states may think fit to allow.

We must, therefore, first look to the statute to see what the law permits and next to the articles of partnership and certificate filed with the county clerk to see what has actually been done within the law.

The petitioner was organized as a limited partnership in 1936 under the Uniform Limited Partnership Act of New York, Laws

1919, ch. 408, art. 8; McKinney's Consol. Laws of N. Y., Ann., bk. 38 (1923), and filed a certificate setting out the information required by section 91 of that act. A limited partnership as defined by the act is one formed by one or more general partners and one or more limited partners, and "the limited partners as such shall not be bound by the obligation of the partnership." Sec. 90. A limited partner is not liable as a general partner unless he takes part in the control of the business, sec. 96; and if he contributes capital erroneously, believing himself a limited partner, he does not become a general partner provided he at once withdraws, sec. 100. A general partner, on the other hand, has all the rights and powers and is subject to all the liabilities of a partner in an ordinary general partnership, except that he may not do certain things without the consent of all the limited partners. Among these powers withheld on condition is that to admit a person as a general partner, or a person as a limited partner unless that right is given in the certificate; or to continue the business with partnership property on the death, retirement or insanity of a general partner, unless that right is given in the certificate. Sec. 98. A limited partner has the full rights of a general partner to inspect the partnership books and to partnership information, and to a share of the profits. Sec. 99. One person may be both a general partner and a limited partner, his latter status giving him in respect of his contributions the rights of a limited partner against the other members. Sec. 101. A limited partner may withdraw his contributions under certain conditions, sec. 105; and his interest is assignable, sec. 108; but his assignee does not become a "substituted limited partner," and as such have access to the partnership books except with the consent of all the members, unless the assignor's power to make him such is set out in the certificate. Sec. 108. Retirement, death, or insanity of a general partner dissolves the partnership, unless it is continued with the consent of all the members or under a right stated in the certificate, sec. 109, but it is not stated that the death of a limited partner has such an effect. Sec. 110. The certificate is canceled on general dissolution of the partnership, and must be amended on admission of either a limited or general partner. Sec. 113.

When we turn to the certificate to ascertain the powers reserved under it as allowed by the statute, we find that:

\*      \*      \*      \*      \*      \*      \*

IX. Upon the written consent of all the general partners, and upon terms agreed upon by them in writing, additional limited partners may be admitted at any time.

X. On the death, retirement or insanity of any one or more of the general partners, the remaining partner or partners shall have the right to continue the business.

XI. A limited partner shall have the right to substitute an assignee of the whole or part of his interest as contributor in his place, on the terms and conditions governing his, the assignor's, interest in the partnership. Such assignee shall have the rights and obligations of a substituted limited partner under the Partnership Law.

After this survey of statutory limitations on limited partnerships, we are in a position to examine the claims of corporate resemblance made by the respondent. What the four general partners did was to redistribute the net worth of the old ordinary partnership, $300,000, between themselves as general partners and their wives and children as limited partners, Klein's contribution as a general partner being $50,000 as against $25,000 for the three other general partners, for the reason, apparently, that he had no children to make limited partners. The same amount of money, in short, was employed in the new partnership as in the old, and it was divided as before insofar as family ownership was concerned, but limited partners were introduced, with consequent changes in legal relations and status.

There was centralized control by the general partners, but this fact did not make them analogous to directors of a corporation. They were acting in their own interest as hitherto, which constituted five-twelfths of the partnership, and not merely in a representative capacity for a body of persons having a limited investment and a limited liability. Nor were the limited partners here able to remove the general partners and control them as agents, as stockholders may control directors. The general partners under powers reserved by the certificates might increase the limited partners, to obtain new money, but the latter, unlike new stockholders in a corporation, acquire no share in control.

A contingent continuity of existence had been provided for by the reservation in the certificate of the power of the surviving general partners to continue the business on the death, retirement, or incapacity of a general partner. We do not think this analogous to the chartered life of a corporation which continues regardless of the death or resignation of its directors or stockholders. A limited partnership is dissolved by death, as an ordinary partnership, unless the right to continue is retained, but continuity is not assured by this power, for it is one vested in the several general partners, apparently, and not in the partnership as an entity. Continuance will be certain only if the remaining general partners agree to it, as would be the case, in substance, in a general partnership. In an ordinary partnership, on the death of a partner a new partnership is formed; here the old partnership continues but receives new life, in effect, from the decision of the members. Moreover, on a general partner's

death his interest must be paid over to his personal representative, and the capital of the partnership is to that extent liquidated.

The death of a limited partner apparently has no such effect of dissolving the partnership. A limited partner's interest is transferable but it is obvious from other provisions that the assignee does not thereby become a substituted limited partner, unless that power is reserved. It was reserved here; and some analogy, therefore, does arise between the interest of a limited partner and that of a corporate stockholder in the matter of transferability of interest. It does not appear, however, that such transfers were contemplated, for no mechanics were provided for the ready transfer of interests through certificates representing shares in the partnership. The limited partner had the power to substitute an assignee, but he also might merely assign without substitution. The anomalous class of assignees which would result in the latter case would bear no resemblance to a corporate stockholder's status. The general partner's interest was, of course, not any more transferable than that of a general partner in an ordinary partnership. We do not think that the transferability of the interest of a limited partner, however analogous in itself to the corporate stockholder's right, can be taken as determinative here.

Nor can we believe the limited liability of the limited partner to be a final criterion. Limited liability is, of course, an essential element of doing business in the corporate form, but the persons here actually in control of all business activity of the partnership were the general partners only, and the moment that a limited partner should enter into business activity he would lose his status as a limited partner and become a general partner. We find nothing in the statute that limits the liability of general partners of a limited partnership, but, on the contrary, it is provided that their liability shall be the same as that of partners in an ordinary partnership except in certain matters not here relevant.

We think that the provision in the partnership articles (art. second) to which respondent refers can have no bearing, therefore, on their liability to general creditors, and that it does not go beyond the rights of the partners *inter sese*. Nor do we regard the provision as to "salaries" of the general partners nor that as to a guaranteed payment of 4 percent on contributions to all members as having any relevance in the present relation. Moreover, it would seem to be immaterial that under New York law a limited partnership may take real estate in the partnership name. For article 2, section 10, paragraph 2, of the General Partnership Law provides that the law of general partnerships shall apply to limited partnerships, except where inconsistent therewith; and article 5, section 51, paragraph 1 provides as follows: "A partner is co-owner with his partners of specific part-

nership property, holding as a tenant in partnership." This would indicate that the partnership does not hold as an entity. The mere fact that the partnership is given power by implication in section 21 to hold real property in its name is not determinative. Section 21 of the General Partnership Law provides that, where land is so held, any general partner may convey legal title to it by a conveyance executed in the firm name, *ibid*, par. 1; or equitable title of the whole partnership interest by a conveyance executed in his own name, *ibid*, par. 2. The partnership agency thus provided for does not, however, constitute the partnership an entity, since the same general principles apply to real as to other property, and any general partner in respect of it acts, as in all other things, as if he owned it both jointly and severally. The general effect of these provisions is that, while the legal title to real property may be held in the name of the partnership, as it might be held in the name of an individual partner, the equitable title is in the several partners as tenants in partnership. (Sec. 51.)

A limited partnership may not sue in its own name. In actions brought by such a partnership, the general partners are the proper parties plaintiff. (See sec. 115.)

We must conclude, therefore, after an examination of the organization and legal powers and liabilities of the members of the limited partnership before us, that it does not bear such a resemblance to an association or operate effectively as such so as to justify our inclusion of it in that category for tax purposes. Although a limited partnership, it was still a partnership, and should be treated as such under the statute. The statute provides a category for individuals doing business in partnership and deriving income thus; and we may not disregard it where the likeness to an association is no plainer than it is here.

*Decision will be entered for the petitioner.*