Eleanor Sparks Davison (formerly Eleanor Sparks Martin) v. Commissioner.
Davison v. Commissioner
Docket No. 37291.
United States Tax Court
1953 Tax Ct. Memo LEXIS 329; 12 T.C.M. (CCH) 293; T.C.M. (RIA) 53089; March 20, 1953
*329 Held, under the facts petitioner was not a limited partner in a partnership organized under the laws of the State of New York on July 1, 1943, under the firm name of "Tegumat", succeeding a general partnership of the same name of which her then husband and two others were the general partners. Not being a bona fide partner in said partnership she was not taxable on her alleged distributable share of the profits of the partnership for 1945. The Commissioner is not sustained in his determination of the deficiency and a five per cent negligence penalty. R. Palmer Baker, Jr., Esq., 25 Broadway, New York, N. Y., for the petitioner. Francis J. Butler, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's income tax of $1,431.82 and a negligence penalty of $71.59 for the year 1945. The assignments of error are as follows: (a) Respondent, in determining the petitioner's income under Sections 22 (a) and 181 of the Internal Revenue Code for the calendar year 1945, erred in treating an amount of $3,380.00 as income to the petitioner as her distributive share of partnership income from the so-called "Tegumat Company". (b) Respondent, in determining that a penalty of $71.99 [$71.59] is due, erred in treating as negligent the omission of said $3,380.00 from the petitioner's income on her return for the calendar year 1945. Findings of Fact Part of the facts were stipulated and as stipulated are so found and incorporated herein by reference. The petitioner Eleanor Sparks Davison was married to John Stuart Martin during the entire calendar year 1945 and *331 the preceding years hereinafter mentioned. She resided in Oyster Bay, New York. Her Federal income tax return for the calendar year 1945 was filed with the Collector of Internal Revenue for the First District of New York. Petitioner and John Stuart Martin were divorced on or about July 25, 1946, after entering into a property settlement agreement on or about May 29, 1946. Prior to January 1, 1943, Martin (hereinafter sometimes referred to as petitioner's husband) had a number of business interests, particularly in the experimental or chemical field. He had a business known as Benre, or Bennre, Chemicals. On or about January 1, 1943, Martin formed a general partnership with Julio G. Herrera and James Reid under the firm name and style of "Tegumat." The business of this partnership was the development and promotion of industrial processes, particularly a waterproof and greaseproof compound which was called "Tegumat." Petitioner was not a member of the January 1, 1943 partnership. Under date of July 1, 1943, petitioner with Ann Nollen and Adair Roy Reid, as limited partners, joined in the execution of a limited partnership agreement in which Julio G. Herrera, James Reid and her *332 husband John Stuart Martin were designated general partners. This firm conducted business in New York County under the firm name and style of "Tegumat." It was a continuation of the business of the general partnership which had been formed January 1, 1943, under the same name. The capital contribution of each of the general partners and limited partners alike called for under the July 1, 1943 agreement was $1,083.45. In addition, Herrera, Martin, and Reid, the general partners, each contributed his interest in the January 1, 1943 partnership to its successor. Petitioner joined in the execution of the July 1, 1943 partnership agreement largely because her husband insisted that she do so. She was not at all anxious to become a member of the limited partnership. Petitioner at first objected to signing the partnership agreement because she "did not understand the business." She showed the agreement as originally prepared to her father, who had it reviewed by his attorney and amended by the substitution of new pages to make it clear that any distributive net loss should be debited only to the capital accounts of the general partners. After these changes were made she signed the partnership *333 agreement. Petitioner's interest in the partnership was given to her by her husband. The motivation of petitioner's husband in bringing her into the partnership was to "split" the proceeds of the venture and thereby minimize the family's income tax over future years. Petitioner did not contribute any services to the partnership. The partnership formed was to continue for a period of 3 years from July 1, 1943, but could be terminated under certain provisions. The partnership agreement recited under the heading "Capital Contributions" that the capital contribution of petitioner was $1,083.44. The agreement further provided for interest on capital, and that profits would be credited to the partners' capital accounts and that petitioner was to have a 16 2/3 per cent share in the profits. Petitioner was not to share in the losses. Net profits could be drawn upon by the respective partners as soon as they were credited to their capital accounts. In the event the partnership was terminated, the partnership agreement provided that the assets, over and above the amount necessary to pay the debts, should first be used to pay the capital contributions of the limited partners, then the balances *334 credited to the partners in their respective capital accounts, and then interest on the balances. The partnership agreement recited that it was to be governed by the laws of the State of New York. The partnership agreement was acknowledged before a notary public. A "Certificate of Formation of Limited Partnership" was filed with the clerk of New York County, New York. This certificate was recorded in said office and publication thereof was completed on September 18, 1943. On September 1, 1943, a "Certificate of Conducting Business under Assumed Name" was filed in the office of the clerk of New York County, New York. The assumed name was stated as "TEGUMAT." The balance sheet of Tegumat on June 30, 1945, showed the following: ASSETS
Total current assets
$43,221.85
Total fixed and other assets
789.80
Total assets
$44,011.65
LIABILITIES
Total liabilities
$ 9,801.38
Total capital
34,210.27
Total liabilities and capital
$44,011.65
Petitioner had a balance in her capital account July 1, 1944 of $1,849.63. In the period from July 1, 1944 to June 30, 1945, $3,287.52 plus $92.48 interest on capital was credited to the capital account of petitioner. This *335 left a balance in such account as of June 30, 1945 of $5,229.63. Petitioner filed an individual income tax return for the year 1945, which disclosed adjusted gross income of $10,930. This income was listed as being from dividends and interest. Petitioner did not include as income in this return the $3,380 which represented her alleged distributable share of the income of the Tegumat partnership. John Stuart Martin, who was petitioner's husband in 1945, included his distributable share of the Tegumat partnership in his income tax return for 1945, but did not include petitioner's share since she filed a separate return. A corporation known as "Tegumat, Inc.," was organized under the laws of the State of New York by the filing of a certificate of incorporation with the Department of State of New York on June 7, 1946. A copy of this certificate was filed in the office of the clerk of New York County, New York, on July 16, 1946. One of the three directors and subscribers named in the certificate is Ann Nollen. She is also named as a limited partner under the limited partnership agreement of July 1, 1943. No other individual named in the agreement appears on the certificate of incorporation *336 as a director or subscriber. Petitioner owned no stock in this corporation which was organized June 7, 1946. Petitioner never received any distribution of money or other assets from the partnership. The partnership, or petitioner's interest therein, was never mentioned in the course of negotiations leading up to the property settlement which was entered into between petitioner and her husband on or about May 29, 1946. Petitioner did not on July 1, 1943, when she signed the limited partnership agreement, intend in good faith and with a business purpose to become a partner in the business known as "Tegumat." She was not a partner in the business during the taxable year 1945, and she shared in none of the profits of the business. Petitioner in failing to include as income in her 1945 individual income tax return her distributable share of the partnership acted in good faith believing that she was not taxable thereon. Inasmuch as none of the income of the partnership is taxable to her there is no negligence penalty. Opinion BLACK, Judge: The Tax Court during the last several years has had many family partnership cases. Usually it has been the taxpayer who has sought to sustain *337 the validity of the partnership as one of bona fide intent, and it has been the Commissioner who has refused to recognize it for income tax purposes. Here the situation is reversed. Petitioner, the taxpayer, although she concedes she signed the partnership agreement after referring it to her father for examination of some of its provisions, denies that it had validity for income tax purposes. The Commissioner, on his part, contends that the partnership during the period involved was a valid legal partnership and that the distributable profits of each partner, including petitioner, must be taxed to the respective partners whether distributed to them or not. Respondent relies on the sections of the Code printed in the margin. [1]
*338 The fact that a partnership is organized as a limited partnership does not change the fact that it is to be treated as a partnership under the applicable statutes and the respective partners taxable as such. Glensder Textile Co., 46 B.T.A. 176; Western Construction Co., 14 T.C. 453, affd. per curiam (C.A. 9) 191 Fed. (2d) 401. The question of whether a family partnership is real and should be recognized as such depends upon "whether the partners really and truly intended to join together for the purpose of carrying on the business and sharing in the profits and losses or both. And their intention in this respect is a question of fact." Commissioner v. Culbertson, 337 U.S. 733. In the Culbertson case the Court also said: "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities *339 and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *" We have endeavored in the instant case to apply the rule of the Culbertson case, supra, and in doing so have reached the conclusion that petitioner was not a partner, except in form only, in the limited partnership of "Tegumat." We have, therefore, found as an ultimate fact in our Findings of Fact that: "* * * Petitioner did not on July 1, 1943, when she signed the limited partnership agreement, intend in good faith and with a business purpose to become a partner in the business known as 'Tegumat.' She was not a partner in the business during the taxable year 1945, and she shared in none of the profits of the business." In making the foregoing ultimate finding of fact we have not been altogether free from doubt, but it represents our best judgment after a study of the facts which have been stipulated and the oral testimony. Petitioner testified at the hearing, among other things, as follows: *340 "Q. Why did you sign the agreement of July 1, 1943? "A. Well, because my husband, my then husband, asked me to.
"Q. Did he show you the agreement and ask you to sign it? Did he present it to you for signature? "A. I think he talked about it first and then he brought it home and presented it to me for signature. "Q. Did he explain the provisions of the agreement in any detail to you? "A. Well, I don't understand those sort of papers. So he didn't explain it to me, so that it made any particular sense. "Q. Did you have any objection to signing the papers? "A. Yes, I did. "Q. Did you discuss - may I strike that out - did you express your objections to Mr. Martin? "A. Oh, yes. I told him that I wanted to be sure that I was signing something that was all right because I did not understand the business and I did not really want to go into it at all. "Q. Did he give you any reason which persuaded you to sign the agreement? "A. Well, he said that Mr. Herrera's wife was going to sign this and that Mr. Reid's son or daughter - daughter, I guess it was - was going to be a special partner and I should [be] one too, and he said he was going to make so much money we ought *341 to split the proceeds. "Q. He said you should split the proceeds? "A. Yes; well, get that into two accounts. "Q. Did he tell you why - indicate to you why there was any advantage in splitting the proceeds and putting it into two accounts? "A. He may have, but I might not have understood why, because I would not understand about that sort of business." Respondent called as a witness John Stuart Martin, petitioner's former husband. On redirect examination by respondent he testified as follows: "Q. But I would like to ask you this, Mr. Martin: You did intend, didn't you, to enter into a partnership with your wife as a limited partner? "A. Well, it is what you would call a bookkeeping arrangement, isn't it? That is to say, if that was what you had to be as a partner, then that is what she would up to be, a partner, but of a limited nature, and that is why it was called limited. She was not expected or permitted to enter into the policy of the company. "As a matter of fact, she never drew from the funds - none of us did. "Q. You did not just sign this partnership to evade income tax, did you? "A. That is about what it came down to, sure. Not to evade income tax; to minimize *342 income tax. That isn't evading it. "Q. Then you did have the intent to enter into a valid partnership? "A. Certainly, within the meaning of the law, a partnership would minimize the tax. "Q. That is the answer? "A. Splitting it up." On this sort of evidence, we have been unable to sustain respondent's determination that petitioner was a bona fide limited partner in the partnership of "Tegumat" and that in 1945 she was taxable on $3,380 distributable income of the partnership. As a matter of fact, the facts conclusively show that petitoner never received a penny from the alleged partnership and when in 1946 she was divorced from Martin and prior thereto there was a property division between petitioner and Martin, nothing at all was said about petitioner's interest in the partnership. Later, when the partnership was incorporated on June 7, 1946, petitioner was not one of the incorporators and she received no stock of the corporation. All of this, it seems to us, tends to show that the so-called interest of petitioner in the partnership was only one of form and not of substance. On this issue we sustain petitioner. Cf. Roughan v. Commissioner, 198 F. 2d 253 (C. *343 A. 4, decided July 31, 1952). In that case the court of appeals in affirming the Tax Court's decision that the limited partnership there involved was not a valid partnership under the rule of the Culbertson case, supra, said, among other things: "Nor is there any substance in the taxpayer's assumption that a 'limited' family partnership is in any way entitled to preferential treatment. A limited partnership may certainly be given effect taxwise where it meets the necessary factual requirements but it must pass through the mill of scrutiny, the same as any other. [Citing authorities.] And it can be argued that the very nature of a limited partnership, in that it prohibits the limited partners from engaging in the conduct of the business, makes the taxpayer's case even weaker." Inasmuch as we hold in petitioner's favor on the partnership issue, it follows as a matter of course, there is no negligence penalty. Decision will be entered for the petitioner. Footnotes
1. SEC. 181. PARTNERSHIP NOT TAXABLE. Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. SEC. 182. TAX OF PARTNERS. In computing the net income of each partner, he shall include, whether or not distribution is made to him - * * *
(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183 (b). SEC. 3797. DEFINITIONS. (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof - * * *
(2) Partnership and Partner. - The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization. * * *↩